# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| MARLIN R. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-02353-DCN |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF GEORGETOWN, RICKI MARTIN, and JACK SCOVILLE, as the Mayor of Georgetown, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants City of Georgetown ("the City"), Ricki Martin ("Martin"), and Jack Scoville's ("the Mayor") (collectively, "defendants") motion for summary judgment. For the reasons set forth below, the court grants defendants' motion for summary judgment as to the 42 U.S.C. § 1983 claim and remands the case to state court.

## I.  BACKGROUND

At issue in this case are defendants' actions with regard to 312 E Street ("the Property"), a piece of property plaintiff Marlin R. Brown ("Brown") owns in Georgetown, South Carolina. Compl. at 2. Brown's grandfather, Charlie Banks ("Banks"), originally purchased the Property in 1942. Id. ¶ 15. Banks later died intestate on July 13, 1988, and Clara May Banks Brown ("Clara")—Banks's daughter and Brown's mother—inherited the Property as his sole heir. Id. ¶ 20. Clara then deeded the Property to Brown on August 21, 1989. Defs.' Mot., Ex. 4, Brown Deed.

1

Sometime prior to 1981, the City had a 48-inch corrugated metal storm water drainage pipe installed on the back portion of the Property. Id. at Ex. 2, 1981 Plat. Defendants have been unable to locate records of when and by whom the pipe was installed. Id. at Ex. 13, Cook Dep. at 15, ll. 17–22. Brown's expert, Joe McCray, testified that he spoke with several property owners in the area, and they believed the pipe was installed between 1970 and 1975. Id. at Ex. 10, McCray Dep. at 30, ll. 12–15. In June 1981, Moore, Gardner & Associates, Inc. prepared a survey or plat for the Property that showed the "existing 48' storm sewer" and referenced a "proposed 20' permanent drainage easement." 1981 Plat. The plat was filed with the Georgetown County Clerk of Court on August 25, 1981, and recorded in page 155 of Deed Book 1. Compl. ¶ 21. On September 2, 1981, the City obtained an easement on the Property from Clara for the drainage line and recorded it at page 795 of Deed Book 194 on October 5, 1981. Defs.' Mot., Ex. 3, Easement.

In 1990, Brown applied for and received a building permit to construct a garage on the rear portion of the Property. Id. at Ex. 5, 1990 Building Permit. Brown applied for and received another building permit in 1994 that allowed him to convert the upstairs of the garage into an apartment. Id. at Ex. 6, 1994 Building Permit. Thereafter, Brown began to notice flooding in his yard and contacted the City in 2012 regarding the ongoing flooding problems. Pl.'s Resp., Ex. 1, Brown Aff. at 3; Defs.' Mot., Ex. 9, Brown Dep. at 36. The City sent an engineer to the Property on three or four occasions "to find out how to get the water out of the yard." Brown Aff. at 3. On March 1, 2013, Brown filed a complaint with the City regarding his garage apartment because it began to crack from the flooding. Defs.' Mot., Ex. 8, Brown Dep. at 17.

After contacting employees of the City several times, Brown attended a City Council meeting to discuss his problems on May 7, 2013. Brown Aff. ¶¶ 21–30. At this meeting, the City notified Brown of the drainage easement on his property and informed him that he needed to tear down the back one-third of his garage and apartment for the City to replace the pipe. Id.; Pl.'s Resp. at 11. Brown spoke with Martin, as well as the Mayor, about the building permits and easement numerous times leading up to and following the May 7, 2013 City Council meeting. Brown Aff. ¶¶ 29–41.

Brown filed the instant action in the Court of Common Pleas for Georgetown County on May 14, 2015, asserting a 42 U.S.C. § 1983 claim against the Mayor and Martin and alleging inverse condemnation, negligence, and fraud claims against the City. Compl. 1–2, 7–11. On June 10, 2015, defendants filed a notice of removal of the action to this court pursuant to 28 U.S.C. §§ 1331 and 1441. ECF No. 1. Following the completion of discovery, defendants filed the present motion for summary judgment as to all causes of action on May 9, 2016. ECF No. 19. After receiving multiple extensions, see ECF Nos. 21, 23, 25, plaintiff filed his response in opposition to the motion for summary judgment on June 13, 2016. ECF No. 26. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will

3

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., No. 6:12-cv-183, 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

### III.   DISCUSSION

Defendants argue no genuine issue of material fact exists as to any of Brown's claims and, therefore, defendants are entitled to judgment as a matter of law. Brown, on the other hand, argues he has submitted sufficient evidence as to each cause of action to submit this case to a jury.

### A. Section 1983 Claim Against Martin and the Mayor

Martin and the Mayor argue they are entitled to summary judgment on Brown's § 1983 claim against them because he has failed to allege a constitutional right upon which they infringed. Def.'s Mot. 7. Brown contends Martin and the Mayor violated his "constitutional right to property and should be held liable for the treatment of . . . [him] based on his race." Pl.'s Resp. 23.

"42 U.S.C. § 1983 provides a civil remedy in federal court for deprivation of federal rights under color of state law." Coastland Corp. v. Currituck Cty., 734 F.3d 175, 177 (4th Cir. 1984). Brown appears to bring his § 1983 claim against Martin and the Mayor in their personal capacities because "[e]ach of the individuals named committed an act against [him]."[1] Pl.'s Resp. 22. "Personal-capacity suits seek to impose liability upon a governmental official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). "Official capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. at 165–66 (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.5 (1978)). "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. at 166 (emphasis omitted). "A victory in a personal-

---

[1] But Brown then goes on to discuss the immunities available to a defendant in an official-capacity suit. This is a recurring problem throughout the brief: the arguments are largely conclusory and the precise theory under which he is bringing certain claims is unclear. In any event, when reviewing his argument as a whole, Brown appears to bring his § 1983 action against Martin and the Mayor in their personal capacities. Therefore, the court will analyze this claim accordingly.

capacity action is a victory against the individual defendant, rather than against the entity that employs him." Id. at 167–68.

"When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as an objectively reasonable reliance on existing law." Id. at 166–67. Indeed, "government officials performing discretionary functions generally are granted qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

In deciding a qualified immunity claim, the court should "first determine whether the plaintiff has alleged the deprivation of a constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999). Although the Supreme Court mandated this procedure "for resolving government officials' qualified immunity claims" in Saucier v. Katz, 533 U.S. 194 (2001), the Court reconsidered the two-step sequence

announced in Pearson and determined the order of the analysis was not mandatory. In any event, although the district courts now have discretion as to which prong to analyze first, the two-prong test remains the same. See Pearson, 555 U.S. at 236 ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

      Given the underlying facts and allegations in the instant case, the court begins with the first prong, i.e., whether Brown "has alleged the deprivation of a constitutional right at all." Brown alleges that Martin and the Mayor "violated [his] constitutional right to property and should be held liable for the treatment of [him] based on his race," Pl.'s Resp. 22, but he does not cite a single provision of the U.S. Constitution or the U.S. Code to support this argument. Nor does Brown cite any specific conduct attributable to Martin or the Mayor that violated his rights. Brown only indicates that his "causes of action are related to the actions that occurred on and after May 7, 2013[,] not related to things that happened in 1970." Id. at 23. Further, when pressed to do so by defendants in their motion for summary judgment, Brown simply responded "that is not the standard." The court respectfully disagrees.

      After defendants filed a well-supported motion for summary judgment, the burden shifted back to Brown to demonstrate a genuine issue for trial. See Major, 2012 WL 3000680, at *1 ("The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact," but

"when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))). Nevertheless, even when given the opportunity to present a genuine issue for trial, Brown failed to—and, indeed, refused to—"make a showing sufficient to establish the existence of an element essential to" his § 1983 claim. See Celotex, 477 U.S. at 322 (stating the plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); Major, 2012 WL 2000680, at *1 ("[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.").[2]

Because Brown is unable to identify any constitutional right of which Martin and the Mayor deprived him, or articulate which actions constituted the deprivation, his claim necessarily fails on the other prong of the qualified immunity analysis as well. See Gabbert, 526 U.S. at 290 (stating that, in deciding a qualified immunity claim, the court should "first determine whether the plaintiff has alleged the deprivation of a constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation"). If he cannot articulate which right is at stake, then the court certainly cannot determine whether it was "clearly established" in

---

[2] And while a few constitutional provisions certainly come to mind, it is not the court's job to make Brown's arguments for him. See Builders Mut. Ins. Co. v. Wingard Props., Inc., No. 4:07-cv-3183, 2010 WL 4393270, at *1 (D.S.C. Oct. 29, 2010) ("It is not this [c]ourt's duty to scour the record in order to locate potential arguments on a party's behalf.").

2013.  See id.  To the extent Brown argues "[i]t is the [d]uty of the City based on [its] obligation in issuing permits to be aware of [its] own easements," this does not implicate a constitutional right or any federal statutory rights.

Based on the foregoing, the court finds Martin and the Mayor are entitled to summary judgment as to Brown's § 1983 claim against them in their personal capacities.  Simply put, Brown failed to set forth any facts or cognizable arguments to establish a genuine issue for trial.

### B.     Remaining State Law Claims

Upon finding that Brown's § 1983 claim fails as a matter of law, the court must now determine whether it should exercise supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a).  "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every other claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009); see also 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 553 n.4 (4th Cir. 2006) ("Once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 353–54 (1988))).  In exercising this discretion, the court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

Given that the court granted summary judgment in favor of Martin and the Mayor as to Brown's § 1983 claim arising under federal law, Brown's remaining claims against the City for inverse condemnation, gross negligence, and fraud all arise under South Carolina law. The court finds that the parties would not be inconvenienced or unfairly prejudiced by its decision not to exercise supplemental jurisdiction over Brown's remaining claims, nor does the court find any underlying issues of federal policy involved in his state law claims. See id. The comity factor, of course, weighs in favor of declining to exercise supplemental jurisdiction, and considerations of judicial economy demand the same result. See id. Accordingly, the court declines to exercise supplemental jurisdiction over Brown's state law claims for inverse condemnation, gross negligence, and fraud. See Carlsbad Tech., 556 U.S. at 640 (providing that the "district court's decision whether to exercise [supplemental] jurisdiction after dismissing every other claim over which it had original jurisdiction is purely discretionary").

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion for summary judgment as to Brown's § 1983 claim against Martin and the Mayor, and the court **REMANDS** the remaining state law claims against the City for inverse condemnation, gross negligence, and fraud to the Court of Common Pleas for Georgetown County.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 23, 2016**
**Charleston, South Carolina**